Jeffrey J. Greenbaum
Charles J. Falletta
**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, NJ 07102-5400
Telephone:     973.643.7000
Facsimile:     973.643.6500

Jennifer L. Kelly (*pro hac* application pending)
Tyler Newby (*pro hac* application pending)
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

*Attorneys for Defendant*
SUPERCELL OY

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALAN BRAHAMSHA, individually and on behalf of all others similarly situated, | : | Civil Action No. 16-8440 (FLW)(DEA) |
| | : | |
| Plaintiff, | : | |
| | : | **CERTIFICATION OF** |
| v. | : | **JEFFREY J. GREENBAUM** |
| | : | |
| SUPERCELL OY, a Finnish limited company, | : | |
| | : | |
| Defendant. | : | |
| | : | |

JEFFREY J. GREENBAUM, of full age, hereby certifies as follows:

1.     I am an attorney at law of the State of New Jersey and a Member of the law firm

of Sills Cummis & Gross P.C., attorneys for Defendant Supercell OY ("Supercell").  I submit

this Certification in support of Supercell's Motion to Dismiss Plaintiff's Complaint.

2.      Attached hereto as Exhibit A is a true and correct copy of the Transcript of Decision in *Russell v. Croscill Home, LLC*, Civ. No. 16-1190 (PGS) (D.N.J. Oct. 11, 2016).

3.      Attached hereto as Exhibit B is a true and correct copy of the Transcript of Decision in *Wenger v. Bob's Discount Furniture, Inc.*, Civ. No. 14-7707 (PGS) (D.N.J. Feb. 29, 2016).

4.      Attached hereto as Exhibit C is a true and correct copy of the Order of Decision in *Candelario v. Rip Curl, Inc.*, Civ. No. 16-00963 (CJC)(AGRx) (C.D. Cal. Sept. 7, 2016).

I hereby certify under penalty of perjury that the foregoing is true and correct.


Executed on December 2, 2016.

/s/ Jeffrey J. Greenbaum
JEFFREY J. GREENBAUM

# EXHIBIT A

1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
2

3    _____
     RYAN RUSSELL,
4                      PLAINTIFF

5       Vs.                              CIVIL NO.
                                         16-1190 (PGS)
6    CROSCILL HOME, LLC,
                       DEFENDANT
7    _____

8

9                              **OCTOBER 11, 2016**
                               CLARKSON S. FISHER COURTHOUSE
10                             402 EAST STATE STREET
                               TRENTON, NEW JERSEY  08608
11

12

13   B E F O R E:       THE HONORABLE PETER G. SHERIDAN
                         U.S. DISTRICT COURT JUDGE
14                       DISTRICT OF NEW JERSEY

15

16

17

18   **COURT'S OPINION ON MOTION TO DISMISS**

19

20

21

22                       Certified as true and correct as required
                         by Title 28, U.S.C. Section 753
23                       /S/ Francis J. Gable
                         _____
                         FRANCIS J. GABLE, C.S.R., R.M.R.
24                       OFFICIAL U.S. REPORTER
                         (856) 889-4761
25

1      THE COURT:  This matter comes before the Court on a

2  motion to dismiss plaintiff's class action complaint, or in

3  the alternative to dismiss the plaintiff's class action

4  allegations pursuant to Federal Rules 12 and 23.  On March 2,

00:00      5  2016, plaintiff filed this class action complaint alleging

6  that certain terms of the consumer contract issued by

7  defendant violate the New Jersey Truth in Consumer Contract

8  Warranty and Notice Act (TCCWNA) N.J.S.A. 56:12-14.  Plaintiff

9  alleges diversity because Croscill is incorporated in Delaware

00:01      10  and headquartered in New York, and plaintiff resides in Ocean

11  County, New Jersey.  (Complaint at paragraph 3.)   The

12  plaintiff also asserts jurisdiction under the Class Action

13  Fairness Act, 28 U.S.C. Section 1332.

14      This motion focuses on whether the plaintiff has

00:01      15  standing to sue, *Spokeo v. Robins*, 136 S.Ct. 1540 (2016); or

16  whether plaintiff is an "aggrieved" consumer as set forth in

17  TCCWNA.  The complaint alleges defendant "imposed unfair,

18  one-sided provisions in its terms and conditions in violation

19  of certain statutory and common law standards and TCCWNA.

00:02      20  (Complaint at paragraph 2.)  Factually, plaintiff ordered and

21  purchased a Longmont Tea-light Holder by using defendant's

22  website.  (Complaint at paragraph 4.)  The defendant's

23  website, in addition to a purchase order, sets forth the terms

24  and conditions of the purchase (complaint at paragraph 12),

00:03      25  which allegedly violated TCCWNA.  (Complaint at paragraph 17.)

1    Most notably, plaintiff alleged that at least four provisions
2    of the terms and conditions violate TCCWNA.  They are: (1)
3    a provision which "bars plaintiffs from asserting any cause of
4    action" (complaint at paragraph 19); (2) a provision which
5    "deprives individuals of their rights under the New Jersey
6    Products Liability Act" (complaint at paragraph 24); (3) a
7    provision which "bars plaintiff from asserting punitive
8    damages in violation of the New Jersey Punitive Damages Act"
9    (complaint at paragraph 33); and (4), a provision which
10   "denies consumers their rights and remedies under the
11   UCC...for economic harm and/or harm to property." (complaint
12   at paragraph 40).

13        The complaint also alleges in paragraphs 45, 46 and
14   47 that "New Jersey consumer protection laws, including the
15   TCCWNA, are designed to protect individuals from the type of
16   unconscionable and illegal provisions contained in defendant's
17   terms and conditions."  The defendant's imposition upon
18   consumers of the above described terms and conditions violate
19   certain common law standards, including, but not limited to,
20   the Product Liability Act, the Punitive Damages Act, Uniform
21   Commercial Code, and therefore violates TCCWNA.  And finally
22   that the plaintiff brings this statutory claim to "halt
23   defendant's continued use of the illegal language in its
24   disclaimers of liability provisions included in the terms and
25   conditions as set forth on the defendant's website."

*United States District Court*
*Trenton, New Jersey*

1        Despite the above allegations, nowhere in the

2    complaint does plaintiff allege that the Longmont Tea-light

3    Holder he purchased was defective, or that any of the terms

4    and conditions outlined above were invoked by the defendant in

00:06    5    any claim that plaintiff had.  In fact, the complaint lacks

6    any allegation that plaintiff read the terms and conditions or

7    that the plaintiffs were in any way injured.

8        Since this is a class action complaint, even the

9    scope of the class is very broad, and it does not assert any

00:07    10    type of injury.  The class is defined as "all individuals in

11    the State of New Jersey to whom were offered, given,

12    displayed, or entered into the terms and conditions referred

13    herein on defendant's website...during the applicable statute

14    of limitations through the date of final judgment in this

00:07    15    action."  (Complaint at paragraph 48.)

16        The complaint seeks only one count for violations of

17    TCCWNA.  (Complaint at paragraphs 60-72.)  There is no injury

18    alleged, except a broad generalization that defendant is a

19    seller (complaint at paragraph 62), and plaintiff is a

00:08    20    consumer (complaint at paragraph 63).  As a result, "plaintiff

21    seeks judgment awarding the plaintiff and class members of not

22    less than $100 for each violation of TCCWNA", and "order

23    terminating the provisions referred to above."  "The purpose

24    of TCCWNA is to prevent deceptive practices and consumer

00:09    25    contracts, by prohibiting the use of illegal terms or

*United States District Court*
*Trenton, New Jersey*

1   warranties in consumer contracts." *Matijakovich v. PC*
2   *Richards & Son*, 2016 WL 3457011 at *2 (D.N.J. June 21, 2016);
3   (citing *Kent Motor Cars v. Reynolds & Reynolds*, 2002 N.J.
4   424237 (N.J. 2011)).

00:12
5       The Act states in relevant part:
6       "No seller, lessor, creditor, lender or bailee shall
7       in the course of his business offer to any consumer or
8       prospective consumer or enter into any written consumer
9       contract or give or display any written consumer warranty
00:12
10      notice or sign after the effective date of this Act,
11      which includes any provision that violates any clearly
12      established legal right of a consumer or
13      responsibility of a seller, lessor, creditor, lender or
14      bailee as established by state or federal law at the time
00:12
15      the offer is made or the consumer contract is signed or
16      the warranty notice or sign is given or displayed.
17      Consumer means any individual who buys leases, borrows or
18      bails any money, property or service which is primarily
19      for personal family or household purposes.  (N.J.S.A.
00:13
20      56:12-15.)"

21      Generally, in order to state a claim under TCCWNA, a
22  plaintiff must allege four elements:  (1) the plaintiff is a
23  consumer; (2) the defendant is a seller; (3) the seller offers
24  a consumer contract; and (4) the contract includes a provision
00:13
25  that violates any legal right of the consumer or

*United States District Court*
*Trenton, New Jersey*

1   responsibility of the seller.  That's *Matijakovich*, 2016 WL

2   3457011 at *2.

3        Moreover the statute provides that "any person who

4   violates the provisions of this Act shall be liable to the

00:14   5   aggrieved consumer for a civil penalty of not less than $100,

6   or actual damages or both, at the election of the consumer,

7   together with reasonable attorney fees and costs."

8        In reviewing this motion I looked at two issues:

9   Standing to sue under *Spokeo v. Robins*; and whether plaintiff

00:15   10   is an aggrieved consumer under TCCWNA.

11        Standing.  In *Spokeo*, Justice Alito focused on the

12   injury-in-fact requirement to show standing under Article III

13   of the Constitution.  136 S.Ct. 1540 (2016).  The

14   injury-in-fact requirement requires a plaintiff to allege an

00:15   15   injury that is both concrete and particularized.  *Id*. at 1545.

16   In *Spokeo*, the complaint alleged a violation of the Fair

17   Credit Reporting Act (FCRA).  The FCRA has a provision that is

18   similar to the one alleged here under TCCWNA, that is, the

19   FCRA states:

00:16   20        "Any person who willfully fails to comply with any

21        requirement of the Act with respect to any individual, is

22        liable to that individual for, among other things, either

23        actual damages or statutory damages of $100 to $1,000 per

24        violation, cost of the action, and attorney fees and

00:17   25        possibly punitive damages."  That's *Spokeo* at 1543.

1    Similarly, *Spokeo* and this case do not cite an

2  injury in fact.  In *Spokeo*, Justice Alito criticized the

3  complaint because of its lack of factual basis.  For instance,

4  plaintiff alleged a violation of the Fair Credit Reporting

00:17   5  Act, and Alito noted that "someone who was not identified

6  requested a search of Robins' credit history."  And *Spokeo*

7  conducted the search by "some means not identified in the

8  complaint."  And somehow Robins became aware of the contents

9  and discovered it contained inaccurate information.  *Id.* at

00:18   10  1546.  The Ninth Circuit found that Robins' alleged violations

11  of the statutory rights were sufficient to satisfy the

12  injury-in-fact requirement of Article III.  *Id*. at 1546.

13  Judge Alito opined that standing "limits the category of

14  litigants empowered to maintain a lawsuit."  *Id.* at 1547.

00:19   15  Standing has three elements:  (1) plaintiff suffered an injury

16  in fact; (2) that is traceable to the challenged conduct of

17  defendant; and (3) likely to be redressed by a favorable

18  judicial decision.  *Id*. at 1547.

19    Looking at the injury-in-fact requirement, Justice

00:19   20  Alito stated that Congress cannot erase Article III standing

21  requirements by statutorily granting the right to sue a

22  plaintiff who would not otherwise have standing.  *Id*. at

23  1547-48.  That is, to establish an injury in fact, plaintiff

24  must show that he suffered "an invasion of a legally protected

00:20   25  interest that is concrete and particularized, and actual or

1 imminent, not conjectural or hypothetical." *Id*. at 1548.

2 Particularization requires the injury must affect the

3 plaintiff in the personal and individual way. *Id*. at 1548.

4 Concrete injury must be de facto, that is, it must actually

00:20 5 exist. *Id*. at 1548. "Concrete is not...necessarily

6 synonymous with tangible." And "Congress' role in identifying

7 and elevating intangible harm does not mean that a plaintiff

8 automatically satisfies the injury-in-fact requirement

9 whenever a statute grants a person a statutory right." *Id*. at

00:21 10 1549.

11       As a result, in *Spokeo* the court remanded the matter

12 for the court to determine whether there was a concrete injury

13 set forth in that complaint. Here, in looking at the Russell

14 complaint, it appears that there was no concrete injury

00:21 15 sustained by plaintiff. The plaintiff merely alleges a

16 statutory right to $100 per violation under the *Spokeo*

17 rationale. Congress and in this case the state legislature

18 cannot through statute abrogate the standing requirements of

19 Article III. And, as such, the plaintiff has no standing to

00:23 20 sue in this case.

21       With regard to TCCWNA, the Court reasons the same

22 way as it did under *Spokeo*. Under TCCWNA, the plaintiff must

23 show that he is an "aggrieved" consumer in order to seek

24 monetary damages of $100. As noted above, the plaintiff has

00:24 25 not demonstrated that he's "aggrieved" under TCCWNA. In fact,

00:24

1    the plaintiff does not even allege he viewed the illegal terms

2    and conditions on the defendant's website, and there is no

3    allegation of any injury to the plaintiffs.  There is nothing

4    that alleges the product was defective, and there is nothing

5    that indicates that the plaintiff sustained any type of

6    injuries.

7         In this case, we begin with the text of the statute

8    itself.  *Watson v. DineEquity*, 1591 Fed. App'x 132, 135 (3d.

9    Cir. 2014).  Here, TCCWNA does not define the word

00:25

10   "aggrieved".  The Court adopts Black's Law Dictionary

11   definition as "one entitled to a remedy, especially a party

12   who's personal, pecuniary or property rights have been

13   adversely affected by another person's action."  Here, the

14   plaintiff has not established any losses stemming from the

00:26

15   terms and conditions of the defendant's website, and therefore

16   he is not an aggrieved consumer that is required to bring the

17   statutory action.  The plaintiff has cited to some legislative

18   history which indicates that the legislature allowed recovery

19   of the statutory damages whether the consumer was aggrieved or

00:27

20   not aggrieved; but the plain language of the statute controls.

21   It must be accompanied by some injury in fact to be an

22   aggrieved consumer.  There is none shown here.  So, even under

23   TCCWNA, the complaint should be dismissed.

24        Since the parties did not brief the *Spokeo* issue, if

00:28

25   either party wishes the Court to reconsider same, they may

*United States District Court*
*Trenton, New Jersey*

1    file a motion for reconsideration.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

```
 1                 UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
 2
   _____
 3  CHRISTOPHER WENGER, et al,
                  PLAINTIFFS
 4
        Vs.                          CIVIL NO.
 5                                   14-7707 (PGS)
    BOB'S DISCOUNT FURNITURE, INC.,
 6                DEFENDANT
   _____
 7
   _____
    DAVID & KATINA SPADE, et al,
 8                PLAINTIFFS

 9      Vs.                          CIVIL NO.
                                     15-1826 (PGS)
10  SELECT COMFORT CORP., et al,
                  DEFENDANTS
11 _____

12
                          FEBRUARY 29, 2016
13                        CLARKSON S. FISHER COURTHOUSE
                          402 EAST STATE STREET
14                        TRENTON, NEW JERSEY  08608

15

16
   B E F O R E:       THE HONORABLE PETER G. SHERIDAN
17                    U.S. DISTRICT COURT JUDGE
                      DISTRICT OF NEW JERSEY
18

19

20  COURT'S OPINION ON MOTIONS TO DISMISS

21

22

23                    Certified as true and correct as required
                      by Title 28, U.S.C. Section 753
24                    /S/ Francis J. Gable
                      FRANCIS J. GABLE, C.S.R., R.M.R.
25                    OFFICIAL U.S. REPORTER
                      (856) 889-4761
```

*United States District Court*
*Trenton, New Jersey*

1    THE COURT:  So, this matter comes before the Court

2  on two putative class actions, each of which is subject to a

3  Rule 12 motion to dismiss for failure to state a claim.  Both

4  complainants allege a violation of the New Jersey Household

00:01    5  Furniture and Furnishing Regulations, N.J.A.C. (13:45A-5.1),

6  and allege a violation of the Consumer Fraud Act (N.J.S.A.

7  56:8-1).  In addition, both seek a civil penalty ($100 per

8  class member) as provided in the Truth-in-Consumer Contract,

9  Warranty and Notice Act (N.J.S.A. 56:8-1) (TCCWNA).

00:02    10    On November 16, 2015, I heard oral argument in the

11  Spade case and decided the motion at that hearing.  After my

12  decision I had second thoughts, so a conference call with the

13  parties was initiated and the Court requested the plaintiff to

14  file a motion for reconsideration regarding the Court's order

00:03    15  granting judgment on the pleadings (ECF No. 39).  Plus, other

16  issues should be addressed:  (1) whether plaintiffs have

17  Article III standing; (2) whether plaintiffs are "aggrieved"

18  under TCCWNA; and (3) issues regarding attorneys' fees.

19  Thereafter, the Court informally combined the two cases for

00:03    20  purposes of oral argument.  (See, January 20, 2016.) (ECF No.

21  67)(ECF No. 46).

22    <u>Spade v. Select Comfort.</u>

23    On January 12, 2015, plaintiff commenced this civil

24  action complaint in the Superior Court, Ocean County, and the

00:04    25  matter was removed to this Court on March 11, 2015 based on

 1   diversity.  The only counts remaining against Select Comfort

 2   are Counts 1 and 2.  Count 1 alleges a violation of TCCWNA,

 3   and Count 2 alleges a violation of the Consumer Fraud Act.  By

 4   way of background, Select Comfort designs, and markets and

 5   supports a line of adjustable firmness mattresses, branded as

 6   Sleep Number® Bed, as well as bases and bedding accessories.

 7   The action arising out of plaintiff's purchase of a Sleep

 8   Number® Bed on or about April 25, 2013.  Plaintiff paid Select

 9   Comfort approximately $9,378.48 for the bed's purchase,

10   including an adjustable base, which allows customers to raise

11   and lower the head and foot portions of the mattress with a

12   remote control.

13          On or about May 29, 2013, the plaintiffs took

14   delivery of the bed.  After delivery, plaintiffs experienced

15   two distinct issues:  One, operation of the bed's mattress was

16   poor, including a shifting problem, that Select Comfort

17   attempted to repair twice; and, two, a loud cracking sound

18   emanating from the base, which defendant also attempted to

19   repair.  Plaintiffs also allege that only one side of the bed

20   responded to the remote control.

21          After a series of unsuccessful attempts to repair by

22   Select Comfort and the vendor, plaintiff retained counsel.

23   Plaintiff's lawyer wrote a letter to the defendants in October

24   24, 2014.  The letter indicated plaintiff revoked acceptance

25   and requested that the defendant remove the bed, provide a

*United States District Court*
*Trenton, New Jersey*

1 refund and pay attorneys fees.  The defendant agreed to pay a

2 full refund in the amount paid for the mattress and bed, but

3 the attorneys fees were not paid.  Despite the settlement,

4 plaintiff sued Select Comfort alleging breach of TCCWNA and

00:07 5 the Consumer Fraud Act by failing to comply with the New

6 Jersey Household Furniture Regulations.

7 Select Comfort counters that it substantially

8 complied with the above Household Furniture Regulations

9 because it timely delivered the bed, it provided a refund for

00:08 10 the defective bed delivered, and plaintiffs cannot demonstrate

11 any loss because the plaintiffs are not aggrieved as the

12 TCCWNA requires because the purchase of the mattress had

13 already been refunded.

14 Wenger v. Bob's.

00:09 15 Plaintiffs placed an order for one tan Westbury love

16 seat, and one petite red chest at Bob's Monmouth Junction

17 store on November 25, 2013.  The furniture was purchased under

18 plaintiff Eileen Muller's name, however, plaintiff Christopher

19 Wenger, Muller's son, paid for the furniture.  At the time of

00:10 20 the sale, plaintiff was given a document containing Bob's

21 policies regarding refunds, cancellation, service and

22 warranties.

23 Within the sales documents received by the Mullers,

24 there is a form that shows the items purchased and the dates

00:47 25 to be delivered.  On that sheet it shows the Westbury tan love

1    seat will be delivered on December 4, 2013, and the petite red

2    chest was taken with them from the store on 11/25/2013. From

3    reading this document it is very clear when delivery will

4    occur. However, the format does not match the terms of the

5    regulation.

6        The plaintiff carried the chest from the store that

7    day, and the love seat was to be delivered. The total price

8    for both items was $778.94. Plaintiff received the furniture

9    on time and it was conforming. Despite the timely delivery of

10   the love seat, plaintiffs claim that Bob's violated their

11   legal rights as consumers in six ways:

12       (1) The provision of the sale document states "The

13   merchandise that you have ordered is promised for delivery to

14   you on or before _____"; and leaving the blank space empty is

15   contrary to the mandatory language required by the Furniture

16   Regulations at N.J.A.C. 13:45A-5.2;

17       (2) the provision in the sales document states "The

18   merchandise that you have ordered is promised for delivery to

19   you on or before _____"; and that clause is not in ten-point

20   bold face as required by the Furniture Delivery Regulations of

21   (N.J.A.C. 13:45A-5.2(a));

22       (3) the provision in the sales document which states

23   "If the merchandise ordered by you is not delivered by the

24   promised delivery date, Bob's Discount Furniture must offer

25   the choice of (1) cancelling your order with a prompt full

1    refund of any payment you have made, or (2) accepting delivery

2    at a specific later date; and that language is not in

3    ten-point bold face type as required by the regulations

4    (N.J.S.A. 13:45A-5.3(a));

00:14   5            (4) The provision in the sales document which

6    provides only for partial refund if a special order item is

7    cancelled later than three days after it was ordered is

8    contrary to the requirement that a full and prompt refund be

9    given if the ordered merchandise is not delivered by the

00:14   10   promised delivery date as mandated by the Furniture

11   Regulations (N.J.A.C. 13:45A-5.1(b));

12           (5) The provision in the sales document which

13   provides the consumers are not entitled to a full refund of a

14   special order which is cancelled later than three days after

00:14   15   it was ordered is contrary to the requirements (N.J.A.C.

16   13:45A-5.1(b)), and therefore violates the Furniture

17   Regulations at N.J.A.C. 13:45A-5.3(c); and

18           (6) The provision in the sales document that

19   requires a consumer to contact a consumer customer care

00:15   20   representative if there is a problem with the delivery of home

21   furniture without notifying that a consumer has the option of

22   obtaining a prompt refund or accepting delivery at a later

23   specified later date if the delivered goods are nonconforming

24   is contrary to the Furniture Delivery Regulations (N.J.A.C.

00:16   25   13:45A-5.1(e)(1)).

1          Although Spade is a motion for judgment on the

2     pleadings, and Wenger is a motion to dismiss for failure to

3     state a claim under FRCP 12(b)(6), the standard is nearly

4     identical.  *Turbe v. Government of Virgin Islands*, 938 F.2d

00:17     5     427, 428 (3d. Cir. 1991).  On a motion to dismiss for failure

6     to state a claim pursuant to Rule 12(b)(6), the Court is

7     required to accept as true all allegations in the complaint,

8     and all reasonable inferences that can be drawn therefrom, and

9     to view them in a light most favorable to the non-moving

01:43     10    party.  That's *Oshiver v. Levin*, 38 F.3d 1380, 1384 (3d. Cir.

11    1994).  To survive a motion to dismiss a complaint must

12    contain sufficient factual matter, accepted as true to "state

13    a claim to relief that is plausible on its face."  That's

14    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also, *Bell*

01:44     15    *Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  In order to

16    survive a motion to dismiss, the complaint must allege facts

17    that give rise to a plausible claim, and raise the right to

18    relief above the speculative level.  That's *Ashcroft*, 556 U.S.

19    662, 664; and *Twombly*, 550 U.S. 544, at 555. The question is

01:44     20    whether the claimant can prove any set of facts consistent

21    with his or her allegations that will entitle him or her to

22    relief, not whether that person will ultimately prevail.

23    That's *Semerenko v. Cendant, Corp.*, 223 F.3d 165, 177 (cert.

24    denied 531 U.S. 1149, 2001).

00:17     25              Analysis.

*United States District Court*
*Trenton, New Jersey*

1    The Court will address the claims of both plaintiffs

2    first by addressing the Furniture Delivery Regulations, then

3    working back through the Consumer Fraud Act and TCCWNA.

4                    Furniture Delivery Regulations.

00:18    5    The Division of Consumer Affairs within the

6    Department of Law and Public Safety promulgated the Furniture

7    Delivery Regulations sometime prior to 1995.  Evidently "delay

8    or non-delivery of household furniture that has been ordered

9    is one of the most frequent complaints reported to the

00:18    10   Division."  27 N.J.R. 3566(a) (September 18, 1995) (Proposal

11   Number PRN 2000-327).  The purpose of the Furniture Delivery

12   Regulations is to "enable the Division to continue its task

13   force and operation to secure compliance, and to respond to

14   consumer complaints."  Id. (Social Impact Section.)  As

00:19    15   promulgated under the Consumer Fraud Act, the Division may

16   also seek sanctions where there are "serious or persistent

17   violators."  Id.  The regulations impose contract conditions

18   upon the sellers of furniture.  The regulations require that

19   the seller:

00:19    20        "(1) deliver all of the ordered merchandise by or on

21        the promised delivery date; or provide written notice

22        of the impossibility of meeting the promised date, the

23        notice shall offer the consumer the option to cancel said

24        order with a prompt refund or to accept delivery at a

00:20    25        specified later time, said notice shall be provided prior

1      to the delivery date."  (N.J.A.C. 13:45A-5.1.)

2           (2) The contract or sales document must show the

3      date of the order and contain the following sentence in bold

4      type:

5           "The merchandise you have ordered is promised for

6           delivery to you on or before _____, and then in

7           parentheses (insert date or length of time agreed upon),

8           and it shall not be be preprinted.  (N.J.A.C.

9      13:45A-5.2).

10          (3) The contract or sales document shall

11     conspicuously disclose the seller's obligation in the case of

12     delayed delivery on the first page of the contract form or

13     sales document in bold type:

14          "If the merchandise ordered by you is not delivered

15          by the promised date (insert name of seller) must offer

16          you the choice of (1) cancelling your order with a prompt

17          full payment of any payment you have made; or (2)

18          accepting delivery at a specified later date."

19          (4) Any contract or sales document that contains the

20     term "all sales final" or "no cancellations", or "no refunds",

21     is deemed null and void and unenforceable.  N.J.A.C.

22     13:45A-5.3.

23          And lastly, (5) any violations are subject to

24     "sanctions contained in the Consumer Fraud Act."

25               Spade/CFA.

1    Plaintiffs contend that although they received their
2    furniture in a timely fashion, the sales contract at issue did
3    not contain the requisite language under the Furniture
4    Regulations, and therefore they have suffered violations of
00:23
5    the CFA.  In order to plead a violation of the CFA, Spade must
6    allege:  (1) unlawful conduct by the defendant (a deceptive
7    practice); (2) an ascertainable loss on the part of the
8    plaintiff; and (3) a causal relation between the defendant's
9    unlawful practice and plaintiff's ascertainable loss.  *Hoffman*
00:24
10   *v. Hampshire Labs,* 405 N.J. Super 105, 113 (App. Div. 2009).
11   Given that the regulation states that the failure to comply
12   with any provision of the Furniture Regulations constitutes a
13   deceptive practice (N.J.A.C. 13:45A-5.1(c)), plaintiff must
14   still show there was an ascertainable loss in order to meet
00:25
15   the standards of a bona fide claim.  An ascertainable loss
16   includes actual money paid, as well as an estimate of damages
17   calculated within a reasonable degree of certainty.  *Berg v.*
18   *Reaction Motors*, 37 N.J. 396, 404 (1962.) Once a plaintiff has
19   proven an ascertainable loss by a defendant's failure to
00:25
20   comply with the CFA, it is entitled to compensation for said
21   loss.  *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, at 22 (1994).
22   If a plaintiff proves that unlawful practice under the CFA and
23   an ascertainable loss has occurred, then an award of treble
24   damages and attorneys fees are mandatory.  N.J.S.A. 56:8-19.
00:26
25   The Court finds that the Spade's complaint fails to

1    allege a cause of action under the CFA for violations of the

2    Furniture Regulations because Spade has not shown any

3    ascertainable loss.  Plaintiff's allegations focus on their

4    dissatisfaction with the product itself and not with delayed

00:26    5    delivery.  Generally, the Furniture Regulations only apply

6    where there is untimely delivery.  *Dinikola v. Watchung*

7    *Furniture*, 232 N.J. Super 69, 72 (App. Div. 1989; cert. denied

8    117 N.J. 126 (1990)).  Therefore, the requirements under the

9    CFA are not implicated by the allegations in the complaint.

00:28    10   Plaintiffs did not suffer any losses due to their untimely

11   delivery, and a defective bed was reclaimed and a refund was

12   issued.  There is no ascertainable loss and there is no

13   delayed delivery issue.

14          The plaintiff indicates that although there was no

00:29    15   ascertainable loss attorneys fees should be included as such.

16   The Court disagrees.  Attorneys fees are reimbursable under

17   the CFA only as a consequence of a proven Consumer Fraud Act

18   violation where there is an ascertainable loss.  Here, there

19   is no such loss or violation, and, as such, attorneys fees are

00:29    20   not awarded.  Moreover, the regulations relied upon by

21   plaintiff state that the seller's obligation is to make a

22   "prompt full payment of any payment you have made."  This was

23   done.  N.J.A.C. 13:45A-5.3

24          Wenger/CFA.

00:29    25   With regard to the CFA, the rationale is similar to

1   Spade.  The plaintiff concedes that he has no loss and the

2   furniture was timely delivered.  Moreover, the delivery dates

3   were provided within the sales document, but the bold type was

4   not used and the dates were not placed on the first page as

00:30    5   required by the regulations.  Absent any ascertainable loss, a

6   CFA claim has not been shown.  In both cases, the sellers

7   complied with the spirit of the regulations to deliver

8   furniture timely, and it is unfair to punish such conduct over

9   use of form language.

00:30    10       TCCWNA.

11       A pivotal issue is whether plaintiffs can assert the

12   claim under TCCWNA without any ascertainable loss.  The law in

13   this Circuit has been split on the matter.  In the District of

14   New Jersey, a 2015 case stated that:  "An action pursuant to

00:30    15   TCCWNA that relies on an alleged violation of the Consumer

16   Fraud Act must also meet the requirements of a CFA claim,

17   including the requirement that plaintiff suffered an

18   ascertainable loss."  *Wilson v. Kia*, 2015 WL 9903540 at *3-5

19   (D.N.J. June 25, 2015).  Two more recent cases in this

00:31    20   District that stand for the same proposition are *Mladenov v.*

21   *Wegmans*, 2015 WL 5023484 at *15-16 (D.N.J. August 26, 2015)

22   and *Mattson v. Aetna Life Company*, 2015 WL 5090528 at *9-10

23   (D.N.J. August 31, 2015).  In *Mattson*, the court stated that:

24   A TCCWNA claim grounded in a CFA violation cannot proceed

00:32    25   unless the CFA claim cause of action is stated, and plaintiffs

1    could not sustain their CFA claim partly because their alleged

2    damages were "illusory".

3         Plaintiff responds that these cases are in conflict

4    with other prior authority; such as *McGarvey v. Pensky*, 639

00:33    5    F.Supp.2d 450, 457 (D.N.J. 2009) (reconsideration granted at

6    2010 WL 1379967) (rev'd on other grounds at 486 Fed. Appx.

7    276, 279 (3d. Cir. 2012)); see also, *Arcand v. Brothers*, 2010

8    WL 390733 (D.N.J. 2010, *13).  In those cases, plaintiff

9    claims the TCCWNA "provides a remedy even if the plaintiff has

00:34    10    not suffered any actual damages." *Id.*  The Court disagrees

11    with the *Arcand* and the *McGarvey* cases, based on a different

12    statutory interpretation.  The Court looks at the TCCWNA

13    statute.  Within the TCCWNA statute there is a section

14    entitled "Violations; civil liability to aggrieved consumer:

00:36    15    Action termination of contract."  That section states:

16         "Any person who violates the provisions of this Act

17         shall be liable to the aggrieved consumer for civil

18         penalty of not less than $100 or actual damages or both

19         at the election of the consumer together with reasonable

00:36    20         attorneys fees and costs.  This may be recoverable by a

21         consumer in a civil action in a court of competent

22         jurisdiction or as part of a counterclaim by the consumer

23         against the seller, lessor, creditor, lender, bailee or

24         assigner any of the aforesaid, who aggrieved him;

00:37    25         consumer shall have the right to petition the court to

*United States District Court*
*Trenton, New Jersey*

1      terminate a contract which violates the provision of

2      Section 2 of this Act, and the court in its discretion

3      may void the contract." (N.J.S.A. 56:12-17.)

4          Since the statute requires that the party must be

00:38  5   "aggrieved" to create a TCCWNA cause of action, the use of the

6   word "aggrieved" must be determined.  Plaintiffs argue

7   differently.  They state that this disjunctive language

8   suggests that the legislature intended there be a penalty even

9   if the plaintiff did not suffer any actual damage.

00:39  10         I look at it differently.  So, the Court must

11  determine the definition of aggrieved consumer through the

12  usual rules of statutory construction.  As the Third Circuit

13  notes:  "In deciding questions of statutory interpretation, we

14  begin with the text of the statute itself."  *Watkins v.*

00:40  15  *DineEquity*, 591 Fed. App'x 132, 135 (3d Cir. 2014).  And

16  Circuit Judge Vanaskie reasoned in that case, "New Jersey

17  courts 'subscribe to the statutory words their ordinary

18  meaning and significance and read them in context with related

19  provisions, so as to give sense to the legislation as a

00:40  20  whole.'"  *Id., (*quoting *DiProspero v. Penn*, 183 N.J. 477 (N.J.

21  2005)).  In adopting Judge Vanaskie's rationale, this Court

22  looked to the ordinary definition of an aggrieved party.

23  Aggrieved party is "one entitled to a remedy, especially a

24  party whose personal pecuniary or property rights have been

00:41  25  adversely affected by another person's action."  See, Blacks

1  Law Dictionary.  Use of that definition is consistent with at

2  least one New Jersey case, wherein the court determined that

3  the word aggrieved party "refers to one suffering from the

4  effect of a violation of the act."  See, *Cameron v. Monkey*

00:42  5  *Joe's Big Nut Co.*, 2008 WL 6084192 at *5 (N.J. Super. Ct.

6  2008).

7          In these cases, Wenger and Spade, both defendants

8  provided delivery dates and timely delivered the merchandise,

9  and in Spade the plaintiff received a refund for the defective

00:43  10  furniture.  All of the actions of the defendants are in

11  accordance with the spirit of the Household Furniture

12  Regulations, but may not have met the written requirements

13  appropriately.  However, if you look at common sense and the

14  purpose behind the rule, it is to foster timely delivery of

00:44  15  conforming furniture, which was done in both cases.  As such,

16  the Court does not see, when interpreting the statute, that

17  either plaintiff was an aggrieved consumer.

18          Plaintiffs dispute same.  They allege that there's

19  one brief statement in the legislative history indicating that

00:44  20  a seller may be responsible even if the consumer was not

21  injured (see, Statement to Assembly Commerce Committee).  To

22  utilize such a statement for legislative history undermines

23  the plain meaning rule of statutory construction which the

24  courts utilize.  Where the language of the statute is clear,

00:45  25  there is no need to look outside of the statute to its

*United States District Court*
*Trenton, New Jersey*

1  legislative history in order to determine the statute's

2  meaning.  See, Kim, Yule. *Statutory Interpretation: General*

3  *Principles and Recent Trends*, Washington, D.C., dated August

4  31, 2008, available at UNT Digital Library,

00:45    5  http://digital.library.unt.edu/ark:/67531/metadc26119/.  Last

6  visited Feb. 2, 2016.

7          Here, "aggrieved consumer" is one who is suffering

8  the effects of a violation.  That interpretation is not

9  ambiguous, and therefore the language of the statute should

00:46   10  apply.  Since neither plaintiff is an aggrieved consumer, the

11  TCCWNA counts are dismissed.  An appropriate order shall be

12  entered.

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

# JS-6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

|  |  |
|---|---|
| LUCIA CANDELARIO, INDIVUDALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>            Plaintiff,<br><br>      v.<br><br>RIP CURL, INC. and DOES 1 THROUGH 10, INCLUSIVE,<br><br>            Defendants. | Case No.: SACV 16-00963-CJC(AGRx)<br><br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |

## I.  INTRODUCTION

Plaintiff Lucia Candelario filed this class action lawsuit against Defendant Rip Curl, Inc. and Does 1 through 10, inclusive, alleging violations of New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A §§ 56:12-14 *et seq.*  (Dkt. 12

[First Amended Complaint ("FAC")].)  On August 5, 2016, Defendant filed a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (Dkt. 14 ("Mot.").)  For the following reasons, the motion is GRANTED.[1]

## II.  BACKGROUND

Defendant is a corporation that "markets a variety of beachwear and related products throughout the State of New Jersey via its website, www. ripcurl.com."  (FAC ¶¶ 7, 10.)  Plaintiff is a New Jersey resident who purchased an "Ocean View Tank" from Defendant's website on or about March 9, 2016.  (*Id.* ¶ 6.)  Upon receiving the clothing, she "determined that it was not the cut or quality depicted on Defendant's website, and is an aggrieved customer based thereon."  (*Id.*)  She then reviewed Defendant's "Terms and Conditions" on its website.  (*Id.*)

Plaintiff brought this class action suit against Defendant on behalf of herself and "[a]ll persons in the State of New Jersey who were exposed to the Defendant's website, www.ripcurl.com, including its Terms and Conditions, during the applicable statute of limitations up to and including March 9, 2016."  (*Id.* ¶ 51.)

Plaintiff's only cause of action is a violation of New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A §§ 56:12-14 *et seq.* ("TCCWNA" or "the Act").  The portions of the Act relevant to this action are as follows.  The Act prohibits sellers from offering, or entering into, a written agreement with a consumer "which includes any provision that violates any clearly established legal right of a consumer or

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for September 12, 2016, at 1:30 p.m. is hereby vacated and off calendar.

responsibility of a seller . . . as established by State or Federal law at the time the offer is made or the consumer contract is signed." N.J.S.A. § 56:12-15. The Act further provides that "[n]o consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act. Any such provision shall be null and void." *Id.* § 56:12-16. The Act establishes damages for "aggrieved consumers," and also provides that the rights accorded under this law "are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State." *Id.* §§ 56:12-17; 56:12-18.

Plaintiff alleges that Rip Curl's Terms and Conditions violate the TCCWNA because they "purport[] to":

- "deprive Plaintiff of her right to a cause of action for any unreasonable risk of harm created by Defendant," (FAC at ¶ 70);
- "bar Plaintiff from asserting a claim under the [New Jersey Products Liability Act] for injuries suffered as a result of Defendant's dangerous products," (*id.* at ¶ 71);
- "absolve Defendant of its duty as a business to protect consumers and prospective consumers from the illegal acts of third parties," (*id.* at ¶ 72);
- "do away with [Defendant's] responsibility to take reasonable steps to ensure security measures were in place to protect Plaintiffs and their personal information from the criminal acts of third-party hackers," (*id.* at ¶ 73);
- "bar Plaintiffs from seeking punitive damages for any and all harm caused by Defendant," (*id.* at ¶ 74); and
- "absolve Defendant of its legal obligation to refrain from maliciously and/or wantonly and/or willfully creating an unreasonable risk of harm to consumers," (*id.*).

Thus, Plaintiff seeks monetary damages, fees, and injunctive relief barring Defendant from using the disputed language in its Terms and Conditions.  (*Id.* at Prayer.)

## III.  DISCUSSION

"Standing under Article III of the Constitution is a constitutional limitation on a court's subject matter jurisdiction and cannot be granted by statute."  *Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269, 270 (9th Cir. 2009).  To satisfy Article III's standing requirement, "a plaintiff must show (1) that it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

Here, the FAC fails to plead any injury-in-fact.  "A concrete injury must be de facto; that is, it must actually exist."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (internal quotation marks omitted).  Additionally, "for an injury to be particularized, it must affect the plaintiff in a personal and individual way."  *Id.*  Conspicuously absent from Plaintiff's FAC are any allegations that the clothing Plaintiff purchased was dangerous, or that Plaintiff was in any way harmed in connection with the clothing.  (*See generally* FAC.)  Nor is there even a suggestion that Plaintiff's information has been stolen by hackers or that she was otherwise harmed by the illegal acts of third parties.  (*See generally id*.)  Therefore, there is no indication that Plaintiff had a claim against Defendant which the Terms and Conditions prevented her from bringing.  Plaintiff simply alleges that she purchased a piece of clothing which looked different from its photograph on Defendant's website and then reviewed Defendant's Terms and Conditions.  (*See generally id*.)  Her only connection to the

Terms and Conditions appears to be her decision to read them.  (*Id.* ¶ 6.)  These allegations are insufficient to show a concrete and particularized injury.

Nor has the FAC established that any injury could be actual or imminent here.  The FAC alleges that the Terms and Conditions are illegal because they strip her ability to bring claims arising from "unreasonable risk of harm;" injuries sustained from dangerous products; harm from the illegal acts of third party hackers; and punitive damages for malicious, wanton, or willful creation of unreasonable risk of harm by Defendant.  (FAC ¶¶ 70–74.)  Yet nowhere in the FAC does Plaintiff allege that she actually has a claim against Defendant which falls into *any* of the aforementioned categories.  (*See generally* FAC.)  If such a claim has not accrued, Plaintiff cannot have an "actual or imminent" injury.

Since the FAC does not allege any injury, there are unsurprisingly no allegations showing that injury is traceable to Defendant's conduct—in this case, Defendant's choice of wording in its Terms and Conditions.  Nor can the Court conceive of a scenario where a favorable decision would redress any alleged harms suffered by Plaintiff, because she has not alleged that she was harmed in the first place.  Therefore, Plaintiff's FAC does not meet the three requirements to plead Article III standing.

The parties' arguments concerning the purpose of the TCCWNA and New Jersey's legislative intent in enacting it, (Mot. at 6–8; Opp. at 2–3), do not bear on Article III standing analysis, since the injury in fact requirement is independent of any such intent or any standing Plaintiff might have in state court.  *Perry v. Brown*, 671 F.3d 1052, 1074 (9th Cir. 2012), *vacated and remanded sub nom. Hollingsworth v. Perry*, 133 S. Ct. 2652, 186 L. Ed. 2d 768 (2013) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985)) ("State courts may afford litigants standing to appear where federal courts would not, but whether they do so has no bearing on the parties' Article III standing in federal

court."). However, the Court notes that the New Jersey District Court has also found that the TCCWNA "only grants a remedy to aggrieved consumers and not to aggrieved 'prospective' consumers." *Baker v. Inter Nat. Bank*, No. CIV.A. 08-5668, 2012 WL 174956, at \*9 (D.N.J. Jan. 19, 2012) (citing *Shah v. American Express Co.*, Docket No. 09–cv–622 (JAP), 2009 WL 3234594 \*3 (D.N.J. Sept. 30, 2009)).

Plaintiff argues in one conclusory sentence that because she has incurred "intangible information injuries, [she] has Article III standing to pursue her TCCWNA claim." (Opp. at 3.) She appears to be relying on *Spokeo*'s recognition that "intangible injuries can nevertheless be concrete for purposes of standing analysis." (*Id.* at 1 (emphasis omitted).) Nowhere does she explain, however, what her "informational" injuries are, or where they are addressed in the FAC. (*See id.*) Furthermore, *Spokeo* recognized that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. Therefore, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

Since standing is a threshold question, the Court need not address Defendant's remaining arguments for dismissal under Rule 12(b)(6). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Plaintiff has failed to plead Article III standing, so Defendant's motion to dismiss is GRANTED.

//
//
//
//
//

# IV.  CONCLUSION

For the foregoing reasons, Defendant Rip Curl, Inc.'s motion to dismiss is GRANTED, and Plaintiff's First Amended Complaint is DISMISSED WITHOUT PREJUDICE.


DATED:     September 7, 2016

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE